UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 16-107 (DWF/LIB) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Francisco Javier Pena-Gutierrez, | |
| Defendant. | |

Francisco Javier Pena-Gutierrez, *Pro Se.*

Thomas M. Hollenhorst, Assistant United States Attorneys, United States Attorney's Office, counsel for the Government.

## INTRODUCTION

This matter is before the Court on Defendant Francisco Javier Pena-Gutierrez's, ("Pena-Gutierrez") *pro se* motion for compassionate release in light of the COVID-19 pandemic. (Doc. No. 42 ("Motion").)[1] The United States of America (the "Government") opposes Pena-Gutierrez's Motion.[2] (Doc. No. 47.) For the reasons discussed below, the Court respectfully denies Pena-Gutierrez's Motion.

---

[1] Pena-Gutierrez cites both 18 U.S.C. § 3582(c)(1)(A)(i) ("Compassionate Release") and the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), as grounds for his release. Therefore, the Court construes Pena-Gutierrez's Motion for relief under both the CARES Act and Compassionate release. As discussed below, the Court finds that Pena-Gutierrez's Motion fails under either analysis.

[2] Pena-Gutierrez's response to the Government's opposition was due March 2, 2021. (Doc. No. 45.) He did not file a response.

## BACKGROUND

On July 8, 2016, Pena-Gutierrez pled guilty to one count of Possession with Intent to Distribute Cocaine and Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (Doc. Nos. 25, 26.) On November 4, 2016, this Court sentenced him to 144 months' imprisonment to be followed by a 3-year term of supervised release. (Doc. Nos. 40, 41.)

Pena-Gutierrez is currently incarcerated at Rochester FMC in Rochester, MN with an anticipated release date of June 5, 2026. Federal Bureau of Prisons, Inmate Locator, *https://www.bop.gov/inmateloc/* (last visited March 19, 2021). Rochester FMC reports no active COVID-19 case among its inmates and one among its staff, 375 inmates and 57 staff who have recovered, and no inmate of staff deaths from the virus. Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited March 19, 2021). To date, the Bureau of Prisons ("BOP") has performed 597 tests for COVID-19 at Rochester FMC with 384 of them positive for the virus, and 1 test pending. *Id.* Moreover, 273 staff and 72 inmates at the facility have been fully inoculated against COVID-19. *Id.*

Pena-Gutierrez, who is 58 years old, now moves for compassionate release on the grounds that he is at increased risk of severe infection from COVID-19 because he is overweight and has a history of non-metastatic thyroid cancer, hypothyroidism, rheumatoid arthritis, an inguinal hernia that was repaired in 2019, and takes multiple

medications, including methotrexate, that lower his immunity to COVID-19.³ (Motion at 2; *see also* Doc. No. 46-3 ("Medical Records") at 11-14, 16-17, 51-54, 62-63.) He also expresses concern about his increased risk of contracting COVID-19 in a prison setting and asserts that infection is inevitable unless he is released to his own residence to provide his own protection.⁴ (Motion at 1-2.)

## DISCUSSION

### I.     The CARES Act

The First Step Act ("FSA") was enacted into law on December 21, 2018. *See* Pub. L. No. 115-391, 132 Stat. 5194. As relevant here, the First Step Act revised the provisions for early release to halfway houses or home confinement that had been in place under the Second Chance Act of 2007. *See* 18 U.S.C. § 3624(c)(1).

In its previous form, Section 3624 authorized placement of prisoners into home confinement, providing that the BOP may place a prisoner for 10 percent of the term of his or her imprisonment or six months, whichever is shorter. 18 U.S.C. § 3624(c)(2). Now, as amended, Section 3624 additionally provides that the BOP "shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." *Id.*; FSA § 602. Notably, the FSA did not change 18 U.S.C. § 3624(c)(4), which states that "[n]othing in

---

³       According to his Medical Records, Pena-Gutierrez's body mass index fluctuates between 26.0 to 26.9. (*See* Medical Records at 11, 16.)

⁴       The record reflects that Pena-Gutierrez tested positive for COVID-19 on January 4, 2021 and experienced symptoms, but largely recovered by January 14, 2021. (Medical Records at 1, 23-26, 28, 30, 32-36, 38-48, 54.)

3

this subsection shall be construed to limit or restrict the authority of the Director of the [BOP] under section 3621," which in turn provides that the BOP "shall designate the place of the prisoner's imprisonment." 18 U.S.C. §§ 3624(c)(4), 3621(b).

On April 3, 2020, former Attorney General William Barr exercised emergency authority under Section 12003(b)(2) of the CARES Act to expand the group of inmates who may be considered for home confinement given emergency conditions caused by the COVID-19 virus and its effect on prison populations. The BOP immediately began reviewing all inmates with COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, to determine which inmates are suitable candidates for home confinement. Federal Bureau of Prisons, BOP Update on COVID-19 & Home Confinement, *www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp* (last visited March 19, 2021). To date, the BOP has transferred 23,000 inmates to home confinement. Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited March 19, 2021).

As noted above, the BOP has exclusive authority to determine the placement of prisoners. *See* 18 U.S.C. § 3624(c)(2). Neither the CARES Act nor the FSA alters this authority. *See United States v. James*, Cr. No.15-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr 21, 2020); *United States v. Kluge*, Cr. No. 17-61 (DWF), 2020 WL 209287, at *4 (D. Minn. Jan 14, 2020); *United States v. Roy*, Cr. No. 15-303 (MJD), 2019 WL 6910069, at *1 (D. Minn. Dec. 19, 2019); *Ward v. Bureau of Prisons*, Civ. No. 3:19-770-D-BN, 2019 WL 1930025, at *2 (N.D. Tex. Apr. 2, 2019), *report and recommendation adopted*, Civ. No. 3:19-0770-D, 2019 WL 1924903 (N.D. Tex. Apr. 30,

2019); *see also Xiao v. La Tuna Fed. Corr. Inst.*, Civ. No. EP-19-97-KC, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General—and by delegation the BOP—has the exclusive authority and discretion to designate the place of an inmate's confinement.").

Courts have consistently held that placement questions are not reviewable. *See, e.g.*, 18 U.S.C. § 3621(b); *United States v. Shields*, Cr. No. 12-00410-BLF-1, 2019 WL 2359231, at *5 (N.D. Cal. June 4, 2019) ("The authority to determine [defendant's] placement for the remainder of his sentence is vested solely within the discretion of the BOP."); *United States v. Parish*, Cr. No. 14-166, 2016 WL 7441142, at *1 (E.D. La. Dec. 27, 2016); *Deffenbaugh v. Sullivan*, Cr. No. 5:19-HC-2049-FL, 2019 WL 1779573, at *2 (E.D.N.C. Apr. 23, 2019); *Ward*, 2019 WL 1930025, at *3 (extensive discussion); *Rizzolo v. Puentes*, Civ. No. 119-00290SKOHC, 2019 WL 1229772, at *3 (E.D. Cal. Mar. 15, 2019); *United States v. Perez-Asencio*, Cr. No. 18-3611-H, 2019 WL 626175, at *4 (S.D. Cal. Feb. 14, 2019); *United States v. Burkhart*, Cr. No. 6:03-036-DCR, 2019 WL 615354, at *2 (E.D. Ky. Feb. 13, 2019); *Parsons v. Howard*, Civ. No. 3:18-1406, 2019 WL 469913, at *4 (M.D. Pa. Feb. 6, 2019); *Burg v. Nicklin*, Civ. No. EP-19-24-FM, 2019 WL 369153, at *3-4 (W.D. Tex. Jan. 29, 2019). Furthermore, "[i]t is well established that prisoners do not have a constitutional right to placement in a particular prison facility or place of confinement." *James*, 2020 WL 1922568, at *5 (citing *Khdeer v. Paul*, Civ. No. 18-2112 (ECT/BRT), 2018 WL 6919637, at *5 (D. Minn. Nov. 29, 2018)).

5

In short, because release to home confinement is a placement decision, the Court finds that it is solely within the BOP's discretion to dictate. *See* 18 U.S.C. § 3624(c). Accordingly, to the extent that Pena-Gutierrez seeks release to home confinement, the Court respectfully denies his Motion because it lacks the authority to consider his request.

## II.  Compassionate Release

The First Step Act allows the Court to reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Such "extraordinary and compelling reasons" include (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 ("Sent'g Comm'n Pol'y Statement" or "Statement"), cmt. n.1(a)(ii).[5]

If "extraordinary and compelling reasons" exist, a reduction of sentence is appropriate when "the defendant is not a danger to the safety of any other person or to the

---

[5]  While the Statement refers only to motions filed by the Director of the BOP, the Court construes the statutory command pursuant to § 3582(c)(1)(A)(ii) that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission" to mean that the Statement also applies to motions filed by defendants. The Court acknowledges that there is ongoing litigation surrounding this issue and that other courts have found that the Statement does not apply to motions initiated by a defendant. *See McCoy*, 981 F.3d 271 at 281; *United States v. Brooker,* 976 F.3d 228 at 234 (2d Cir. 2020); *United States v. Jones,* 980 F.3d 1098 at 1110-11 (6th Cir. Nov. 20, 2020); *United States v. Gunn,* 980 F.3d 1178, 1180 (7th Cir. Nov. 20, 2020). The Court also notes that the Eighth Circuit has not yet considered the issue. Here, even if the Court were to exercise broader discretion, it would still find that Pena-Gutierrez's circumstances do not meet the demanding standard for compassionate release.

community, as provided in 18 U.S.C. § 3142(g)" and "the reduction is consistent with [the Sentencing Commission's] policy statement." Statement. The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A).

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[6] *Id.*

The record reflects that Pena-Gutierrez requested compassionate release from the warden at Rochester FMC on December 16, 2020. (Doc. No. 46-4 ("Request").) The warden did not respond to the Request.[7] Because more than 30 days have passed since Pena-Gutierrez's Request, the Court finds that his Motion is properly before it.

---

[6] Although judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A). *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

[7] Pena-Gutierrez submitted an initial request on May 28, 2020. (Doc. No. 42-3.) On June 3, 2020, his initial request was denied for lack of specification. (*Id.*) On December 16, 2020, counsel submitted a second request on Pena-Gutierrez's behalf. (Request.)

7

After a careful review of Pena-Gutierrez's Motion and other documentation, including his Medical Records, the Court finds that his circumstances do not meet the demanding standard necessary for compassionate release.  The Court recognizes that Pena-Gutierrez's use of methotrexate is a factor that places him at increased risk of severe illness from COVID-19.  *See* Centers for Disease Control and Prevention, Coronavirus Disease: People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited March 19, 2021) (stating that persons who use immunosuppressant drugs are at increased risk of severe infection from COVID-19).  The Court also recognizes that his body mass index may increase his risk as well.  *See id.* (stating that persons with a body mass index greater than 25 but less 30 might be at increased risk for severe infection from COVID-19).[8]  Notwithstanding, the Court finds that release is not warranted because there is no indication that either condition, alone or in combination with the presence of COVID-19 in his facility, diminishes Pena-Gutierrez's ability to provide self-care or that Rochester FMC is unable to provide proper medical care.  *See* Statement, cmt. n.1(a)(ii).

---

[8]   Although cancer is also listed as a possible risk factor for severe illness from COVID-19, Pena-Gutierrez's Medical Records do not reflect that he currently has cancer, only that he previously had thyroid cancer.  *See* Centers for Disease Control and Prevention, Coronavirus Disease: People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited March 19, 2021) ("[I]t is not known whether having a history of cancer increases [one's] risk.").  The Centers for Disease and Prevention does not recognize Pena-Gutierrez's other medical conditions as risk factors for severe illness from COVID-19.  *See id.*

Finally, the Court recognizes Pena-Gutierrez's concern about contracting COVID-19 in a prison setting, particularly after already having contracted the virus once.[9]  Nevertheless, the Court finds this fear speculative and declines to grant release based on a generalized fear of reinfection.  *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (a generalized fear of contracting COVID-19 is an insufficiently extraordinary and compelling reason to warrant release); *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) (same); *see also United States v. Garcia*, Cr. No. 16-333, 2020 WL 4018223, at *2 (D. Minn. July 16, 2020) (declining to grant compassionate release based on possibility of severe reinfection).

It is truly unfortunate a number of inmates at Rochester FMC, including Pena-Gutierrez, contracted COVID-19.  It is promising that the facility currently has no active cases of COVID-19 among its inmates and just one among its staff.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited March 18, 2021).  Moreover, Rochester FMC was able provide effective medical treatment such that all inmates who contracted the virus successfully recovered.  *Id.*  Rochester FMC also continues to employ measures to mitigate the spread of COVID-19.[10]  It is also promising that BOP has successfully administered over 85,000

---

[9]   The Centers for Disease and Prevention does not recognize prior COVID-19 infection as a risk factor for severe illness should a person contract the virus again.  *See* Centers for Disease Control and Prevention, Coronavirus Disease: People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited March 19, 2021)

[10]  Effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of the COVID-19" and "to ensure the continued

9

doses of the COVID-19 vaccine to all staff and inmates who wish to receive it. Federal Bureau of Prisons, COVID-19: Coronavirus, https://www.bop.gov/coronavirus/ (last visited March 19, 2021). Sadly, until the vaccine is more widely available, some level of continued spread is inevitable. In spite of the risk, the BOP must continue to carry out its charge to incarcerate sentenced criminals to protect the public and any release must be balanced against the danger it poses to society.

Here, the Court finds that even if Pena-Gutierrez did present an extraordinary and compelling reason, release is not appropriate because the Court cannot conclude that Pena-Gutierrez does not pose a danger to the safety of the community.[11] (*See, e.g.*, PSR ¶¶ 6, 21, 36-37, 53.) Likewise, the Court finds that the § 3553(a) sentencing factors weigh strongly against release. Specifically, the Court finds that such a significant

---

effective operation of the federal prison system." *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, *https://www.bop.gov/resources/news/20200313_covid-19.jsp* (last visited March 19, 2021). Those steps include limiting visits and internal movement, increased hygiene measures, screening of both staff and inmates and virtual legal visits. *See* Federal Bureau of Prisons, BOP Modified Operations, *https://www.bop.gov/coronavirus/covid19_status.jsp* (last visited March 19, 2021). The BOP periodically updates its Plan and is currently in Phase Nine. Federal Bureau of Prisons, Coronavirus (COVID-19) Phase Nine Action Plan, *https://prisonology.com/wp-content/uploads/2020/08/COVID-19-Phase-9-COVID-Action-Plan.pdf* (last visited March 19, 2021).

The BOP is also exercising greater authority to designate inmates for home confinement. Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited March 18, 2021). Since March 2020, the BOP has transferred 23,000 inmates to home confinement. *Id.*

[11]    The Court cannot overlook the nature and means of Pena-Gutierrez's offense conduct to conclude that he does not pose a danger to public safety after serving less than half of his sentence. (*See* Presentence Investigation Report ¶¶ 7-16.)

sentence reduction would not adequately address the seriousness of the charges of Pena-Gutierrez's conviction, promote respect for the law or provide a just punishment.

## CONCLUSION

For the reasons set forth above, the Court finds that Pena-Gutierrez fails to present an extraordinary and compelling reason to warrant compassionate release. The Court also finds that release is not appropriate because it cannot conclude that Pena-Gutierrez poses no danger to the safety of the community and because the § 3553(a) factors weigh against release.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Francisco Javier Pena-Gutierrez's *pro se* motion for compassionate release in light of the COVID-19 pandemic (Doc. No. [42]) is respectfully **DENIED**.

Dated:  March 22, 2021             s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge